IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA MARIA PARRY, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | 2:24-cv-01629 |
| | : | |
| URBN US RETAIL LLC (F/K/A | : | |
| ANTHROPOLOGIE, INC.), URBAN | : | |
| OUTFITTERS, INC., and FOLASHADE | : | |
| AKANBI, | : | |
| | : | |
| *Defendants.* | : | |

## OPINION

### I.    Factual and Procedural Background

This copyright infringement action presents an interesting question not yet addressed by the Third Circuit. Plaintiff Anna Maria Parry (Parry) is the creator and licensor of various fabric designs. In November 2013 Parry created and made publicly available for purchase a fabric design pattern entitled "Echinacea." Joint Statement of Facts at ¶ 1.



At some point thereafter, Parry applied for a copyright on the Echinacea design through the United States Copyright Office. In January of 2022, Parry obtained a

Certificate of Registration indicating and effective registration date of August 20, 2020, and a date of first publication November 20, 2013.[1]  Joint Statement of Facts, at ¶ 2; *Id.* at Ex. A.

In 2016, Defendant Flolashade Akanbi (Akanbi), herself an artist and designer, uploaded a derivative of the Echinacea design (Accused Design) to her Instagram account.



The caption of Akanbi's original post read in part as follows:

> started from a fabric swatch: 'Pretty Potent Echinacea' originally designed by Anna Maria Horner…layered on top of some #mudcloth…this is my kind of #flora #print….#DesignedbyDae.

*Id.* at ¶ 3.  Later in 2016 the caption was modified to remove reference to "Anna Maria Horner" but the image of the Accused Design remained the same, including the hashtag "#DesignedByDae."  *See Id.* at ¶ 4; *Id.* at Ex. D.

On November 16, 2020, Akanbi and Urban entered into an Artist Agreement for the licensing of the Accused Design to Urban for its use on pajama sleep sets.  The

---

[1]    The Certificate of Registration was filed under Parry's maiden name, Anna Maria E. Horner.

Artist Agreement states that "Akanbi will share and will provide artwork, including the [Accused Design] for sleep sets to be launched by [Urban] and that the copyright in this artwork used by [Urban] shall be retained by Akanbi." *Id.* at ¶ 5 (cleaned up); *Id.* at Ex. E. Pursuant to the Artist Agreement, Akanbi was "required to complete a short designer bio as well as any notes about the inspiration or creative process. The intended use of this information [was] to share stores [*sic*] about [Urban's] favorite artists with customers and members of the press." *Id.*

On November 20, 2020, Urban placed orders for the manufacture of pajama sets donned with the Accused Design.



Those pajamas were imported from overseas and were subsequently offered for sale in the United States. At no point did Parry license her Echinacea Print to Akanbi or Urban. *Id.* at ¶ 6-7; *Id.* at Ex. F.

In April of 2024, Parry filed the instant action asserting one count of copyright infringement against both Akanbi and Urban for their appropriation of Parry's Echinacea design as registered in Copyright Registration No. VA 2-280-787 with the

registration date August 20, 2020. Pl.'s Compl. at 6-7. Akanbi was properly served but has to date been unresponsive. *See* Dkts. 7, 8. Prior to this case's transfer to the Undersigned, the Honorable John M. Younge denied, without prejudice, Parry's motion for entry of default against Akanbi. Dkt. 9. Judge Younge indicated that Parry may refile this motion once the claims against the Urban defendants are properly disposed. *Id.*

Presently before the Court is Urban's motion for summary judgment or, in the alternative, an adjudication that Urban's conduct constitutes innocent infringement, lowering the minimum statutory damages award under 17 U.S.C. § 504(c) to $200 and eliminating any potential recovery for attorneys' fees. Parry has filed an opposition to Urban's Motion, as well as a cross-motion for summary judgment asserting that Urban infringed on her design *after* its August 20, 2020, effective registration date, entitling her to elect statutory damages and attorneys' fees, as opposed to actual damages. Urban has also filed an opposition to Parry's motion. The cross-motions are now ripe for decision.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To defeat summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts … [but] must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986)

(cleaned up).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" only if it might impact the outcome of the suit under governing law.  *Id.*  When the factual record permits, summary judgment is an appropriate vehicle to evaluate statutory damages, attorney's fees, and whether an accused defendant's conduct constitutes innocent infringement under the Copyright Act.  *See eg. Gloster v. Relios, Inc.*, No. CIV.A. 02-7140, 2006 WL 1804572, at *1 (E.D. Pa. June 28, 2006); *Adams v. Agrusa*, No. 215CV07270SVWRAO, 2016 WL 7665410, at *4 (C.D. Cal. July 1, 2016), *aff'd*, 693 F. App'x 563 (9th Cir. 2017).

### III.    Statutory Framework

#### a. The Copyright Act

The Copyright Act, 17 U.S.C. §§ 101, *et seq.*, grants an owner of copyright six discrete and exclusive rights which are enumerated at Section 106(1)-(6).[2]  The Act generally prohibits unauthorized copying inconsistent with the rights granted in Section 106 and further prohibits the importation of materials copied abroad without the authority of the owner of copyright.  *See* 17 U.S.C. §§ 501(a), 602(a)(1).  To succeed

---

[2]      (1) [T]o reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106(1)-(6).

on a claim for copyright infringement a "plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.  Copying is a shorthand reference to the act of infringing any of the copyright owner's [six] exclusive rights set forth at 17 U.S.C. § 106." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).

"This second element – unauthorized copying – itself comprises two (frequently conflated) components: actual copying and material appropriation of the copyrighted work." *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018) (*citing* 3 William F. Patry, *Patry on Copyright* § 9:86.50 (Mar. 2018 update).  Actual copying focuses on whether the defendant used the plaintiff's work to create its own.  *Grondin v. Fanatics, Inc.*, No. CV 22-1946, 2023 WL 144284, at *3 (E.D. Pa. Jan. 10, 2023) (Pratter, J.).  Material appropriation focuses on substantial similarity of the original and accused work – examining whether a "lay-observer" would believe that defendant's work represents an appropriation of protectible aspects of the copyrighted work.  *Id.*  This analysis is generally left to the trier of fact, requiring a close side-by-side comparison of the two works.  *Id.*  "Actual copying alone is insufficient to support an infringement claim, absent material appropriation." *Tanksley*, 902 F.3d at 174.

For the purposes of summary judgment Urban essentially concedes that *some* form of copyright infringement has taken place. Urban's principal arguments are that its conduct constituted either (1) "continuing *infringement*" precipitated by Akanbi's pre-registration infringement; or alternatively (2) innocent *infringement*.  *See*

Urban's Mot., at 10, 13-15.  Both arguments presuppose that Urban did in fact utilize Akanbi's Accused Design and discovery has revealed that the Accused Design was inspired by/taken from Parry's Original Design.  Joint Statement of Facts at ¶¶ 3-6. Since Urban does not, at this juncture, contest the alleged substantial similarity between the Original Design the Accused Design, the Court will not belabor the analysis in this regard.

### b. Remedies

Generally, a plaintiff must prove damages to recover in a civil lawsuit.  In the world of copyright, this would take the form of establishing actual damages – "the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 390 (3d Cir. 2016).  However, to encourage compliance with the Copyright Act, Congress established a regime providing for automatic statutory damages in certain circumstances.  *S. Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C.*, 946 F.3d 780, 782 (5th Cir. 2020).

To that end, the Copyright Act "permits a copyright owner to elect, before final judgment, 'to recover, instead of actual damages and profits, an award of statutory damages' for infringement." *Pacesetter Homes, Inc. v. GBL Custom Home Design, Inc.*, No. CV GLR-20-2478, 2021 WL 3633960, at *3 (D. Md. Aug. 17, 2021) (*quoting* 17 U.S.C. § 504(c)(1)).  This election removes the burden of proving actual damages and instead allows plaintiff to recover "in an amount the court sets between $750 and

$30,000 per infringed work, with the potential to recover $150,000 per work for willful infringement[.]"[3]  *See S. Credentialing Support Servs., L.L.C.*, 946 F.3d at 782 (*citing* 17 U.S.C. § 504(c)(1)-(2)).  Further, under Section 505 the Court has discretion to allow recovery of full costs, including reasonable attorneys' fees to the prevailing party.  17 U.S.C. § 505.  Depending on the circumstances surrounding a particular alleged infringement, the strategic advantage of electing statutory damages over actual damages is profound.

### c.  Section 412

Statutory damages are not automatically available in all copyright cases.  Depending on the timing of the infringement, and the copyright owners vigilance in registering their work, 17 U.S.C. § 412 may work to bar statutory damages and attorneys' fees.   Section 412 states:

> In any action under this title … no award of statutory damages or attorneys' fees, as provided by sections 504 and 505, shall be made for—
>
> (1)    *any infringement* of copyright in an unpublished work *commenced* before the effective date of its registration; or
>
> (2)    any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

---

[3]    *But see, Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (holding that the "Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, *including the amount itself.*").

*Id.*[4] (emphasis added).  Stated differently, for a plaintiff to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008).  Section 412 encourages creatives or publishers to promptly register their copyrights.  *Bouchat*, 506 F.3d at 331-332 (*citing* H.R. Rep. No. 94-1476, at 158 (1976)).  It also encourages would-be infringers to review the Copyright Office's database, lest they be subject to harsh penalties exceeding what an actual damages award might represent for the same infringement.  *Derek Andrew, Inc.*, 528 F.3d at 700 (*citing Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998)).

Here, Parry first published her Original Design in 2013.  Joint Statement of Facts at ¶ 1; Parry's Mot., at 1.  Akanbi's alleged 2016 infringement *via* Instagram post of the Accused Design and Urban's alleged 2020 infringement *via* shipment, production, and sale of pajama sets adorned the with the same occurred greater than three months after this initial publication.  Thus, the resolution in this matter will rely on the proper application of 17 U.S.C. § 412(1).

## IV.    Analysis

Critical to this matter, Section 412(1) precludes plaintiffs from electing statutory damages and attorneys' fees for *any infringement that commences before*

---

[4]      The registration requirement is integral to the statutory damages scheme.  *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 329 (4th Cir. 2007).  "A person registers by filing a form with the U.S. Copyright Office. Registration promotes orderly resolution of copyright disputes because it creates a permanent record of the protected work, putting the world on constructive notice of the copyright owner's claim."  *Id.*

the plaintiff registered their copyright.[5]  *S. Credentialing Support Servs., L.L.C.*, 946 F.3d at 782; *Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. CV 17-694, 2018 WL 3193706, at *3 (E.D. Pa. June 28, 2018) (Baylson, J.). Accordingly, the parties' motions largely center around temporal arguments and the connection between Akanbi's 2016 pre-registration infringement and Urban's 2020 post-registration infringement by way of the use of the Accused Design.  Specifically, in its Motion Urban argues that Akanbi's 2016 posting and publication of the Accused Design is the initial act of infringement and that any subsequent infringement perpetrated by Urban represents the same, continued, infringement in a series of ongoing infringements of the same kind.  Urban's Mot., at 12.  In support of this argument, Urban points to its privity *via* the licensing agreement with Akanbi as instructive of the continuity of infringing activity.  *Id.*, at 12-13 (*citing Morgan v. Hawthorne Homes, Inc.*, No. CIV.A. 04-1809, 2011 WL 2181385, at *3 (W.D. Pa. June 2, 2011)).  Therefore, in Urban's view, the running infringement began *before* Parry's registration – barring statutory damages and attorneys' fees under Section 412(1).

Conversely, Parry views Urban's post-registration infringing activity as discrete and insulated from Akanbi's pre-registration infringement for three reasons. First, Parry asserts that the term "commencement" as contemplated in Section 412 does not include preparatory actions of post-registration infringement.  Parry's Mot., at 11 (*citing Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 609 F. Supp. 1325, 1331 (E.D. Pa. 1985) (holding that *sale* by defendants prior to plaintiff's copyright

---

[5]     The facts of this case do not implicate Section 412(2).

registration was commencement of infringement)).  In Parry's view, Akanbi's pre-registration activity falls short of the definition of commencement pronounced in *Whelan*, *vis-á-vis* Urban's infringement through the Accused Products.

Second, Parry asserts that courts around the country have held "that 'commencing' infringement means the first infringing act in a series of acts *of the same kind*."  Parry's Mot., at 12 (emphasis in original).  In other words, Parry argues that infringements violating separate and distinct rights enumerated in Section 106 (*see above* at n.2) are not continuing infringements, but are instead independent infringements with distinct commencement dates.  Her argument follows that the *kind* of infringement alleged against Urban – the manufacturing, import, and sale of the Accused Products and their related advertisement – is distinct from Akanbi's conduct in creating and posting the Accused Design to Instagram in 2016.  *Id.* at 13.  Due to this "heterogeneity" between the infringements, Parry argues that Urban's infringement cannot be viewed as continuing from Akanbi's pre-registration activity.

Finally, Parry urges this Court to consider the time between the alleged infringements.  Citing both district court and circuit court precedent evaluating the concept of continuing infringement, Parry argues that the roughly four-year gap between Akanbi's pre-registration activity and Urban's alleged infringement effectively means that the infringement has stopped and re-started, precluding a finding of continuing infringement.  *Id.* at 15-17.

The Third Circuit has yet to address the issue of continuing infringement under Section 412.  Although other courts have begun to coalesce around a framework

11

interpreting the contours of continuing infringement in this context, a brightline rule has yet to take shape. Against this backdrop, this Court must decide whether Section 412 precludes Parry from recovering statutory damages and attorneys' fees where a four-year gap exists between one defendant's pre-registration infringement of one kind and a separate defendant's post-registration infringement of another kind. This Court finds that Section 412 does not bar the election of statutory damages and attorneys' fees under these circumstances.

### a. Infringements of Different Kinds

Parry's argument suggesting that Akanbi's initial activity are mere "preparatory actions" is frail. While the court in *Whelan* found in the facts before it that sale constituted the commencement of infringement, nothing in that holding suggests that activity short of a sale could *never* precipitate a series of acts constituting continuing infringement. Such a suggestion also conflicts with the plain language of the exclusive rights granted by the statute. *See* 17 U.S.C. § 106(2) ("to *prepare* derivative works based upon the copyrighted work") (emphasis added).

Next, Parry's assertion that Akanbi's pre-registration activity and Urban's post-registration activity are different kinds of infringement – and therefore should be viewed separately for the purposes of the continuing infringement doctrine – has little support in the recent caselaw on the issue. *See* 6 Patry § 22:201 (Sept. 2025 update). This view of the law however is not made of whole cloth. Parry's most persuasive support in this regard is the Ninth Circuit's analysis in *Derek Andrew, Inc.*, above. The panel homed in on the word "commenced," observing that the "verb

generally presupposes a subject of some *kind* of activity begins at one time and continues or reoccurs thereafter." *Derek Andrew, Inc.*, 528 F.3d at 700 (emphasis added) (*quoting Singh v. Famous Overseas, Inc.*, 680 F. Supp. 533, 535 (E.D.N.Y. 1988). In formulating a rule statement, the court held "that the first act of infringement in a series of ongoing infringements *of the same kind* marks the commencement of one continuing infringement." *Id.* at 701 (emphasis added). Finding that there was no "legally significant difference" between the defendant's pre- and post-registration infringement, the panel reversed the district court's award of statutory damages. *Id.*

Both the panel in *Derek Andrew, Inc.* and Parry here, draw some of their support in this regard from the litigation in *Mason v. Montgomery Data, Inc.*[6]  *See* Urban's Mot., at 12; *Derek Andrew, Inc.*, 528 F.3d at 700, 701 n.4. However, a close reading of *S. Credentialing* reveals that both *Derek Andrew, Inc.* and Parry have misinterpreted the Fifth Circuit's copyright caselaw.

In *S. Credentialing* the panel examined a district court's award of statutory damages. The lower court held that a defendant's pre-registration infringement violated the copyright owner's exclusive rights under Section 106(1) and its post-registration infringement violated the owner's rights under Section 106(3). 946 F.3d at 786. So holding, the district court awarded plaintiff statutory damages for the post-registration infringement because it was "different in kind from [the] pre-registration infringements." *Id.*

---

[6]  *See Mason v. Montgomery Data, Inc.*, 741 F. Supp. 1282 (S.D. Tex. 1990); *Mason v. Montgomery Data Inc.*, 967 F.2d 135 (5th Cir. 1992).

The Fifth Circuit reversed. After a thorough statutory interpretation analysis, the panel found "no textual, precedential, or logical reason why infringements occurring after registration are more worthy of punishment because they are 'different in kind' from those occurring earlier." *Id.* at 787. The court further concluded that the language in Section 412 makes clear that Congress intended to prohibit statutory damages when "*any* infringement" precedes registration – regardless of which exclusive right that infringement violates under Section 106. *Id.*; *see also* 6 Patry § 22:201. Notably, the panel observed that defendant in *Derek Andrew, Inc.* actually perpetrated the same infringement both pre- and post-registration, "rendering the 'same kind' language unnecessary to the court's holding" in that case. *S. Credentialing Support Servs., L.L.C*, 946 F.3d at 786 n.3.

Since the Fifth Circuit's ruling in *S. Credentialing*, district courts in other circuits have cited its reasoning on this issue. *See Murphy v. Murphy*, No. 20-CV-2388-JRC, 2025 WL 963999, at *9 (E.D.N.Y. Mar. 30, 2025) (adopting the reasoning from *S. Credentialing* with respect to Section 412); *Trent P. Fisher Enters., LLC v. SAS Automation, LLC,* No. 3:20-CV-216, 2021 WL 1209637, at *9 (S.D. Ohio Mar. 31, 2021) (same). This Court is likewise persuaded by the Fifth Circuit's analysis above. The plain language of Section 412 precludes recovery under Sections 504 and 505 for "*any infringement* of copyright in an unpublished work *commenced*" prior to the registration of the copyright. 17 U.S.C. § 412. "Any infringement of copyright" reads most normally to mean "any *kind of* infringement."

14

Applied here, Parry's arguments sounding in the differences between the defendants' respective pre- and post-registration infringements are unavailing. It matters not that Akanbi may have violated Parry's rights under Section 106(2) pre-registration and Urban violated Parry's rights under Section 106(3) post-registration. Section 412 is blind to this distinction and Parry is unable to recover statutory damages under this theory.

The Undersigned acknowledges Judge Baylson's well-reasoned opinion in *Grant Heilman Photography, Inc.*, 2018 WL 3193706. There, the court explained that "a series of infringements that continues into the post-registration time period can be considered 'continuous' such that any associated pre-registration infringements effectively preclude a plaintiff from pursuing statutory damages." *Id.* at *4. The court, identified two situations where a series of infringements might not be considered continuous: (1) a situation "where the infringer stops infringing for an 'appreciable duration of time'"; and (2) "where there is a 'legally significant difference' between the pre- and post-registration infringements." *Id.* For the latter situation, the court cited to *Derek Andrew, Inc.* and did not have the benefit of the Fifth Circuit's reasoning in *S. Credentialing*. This Court has already explained its affinity for the Fifth Circuit's statutory analysis above and will not apply the legally significant difference standard observed in *Grant Heilman Photography, Inc.*[7]

---

[7]     In *Grant Heilman Photography, Inc*, the plaintiff, seeking statutory damages, claimed the defendant had again violated its copyright after the parties reached a legally binding settlement regarding pre-registration infringements. Plaintiff argued that the post-settlement/post-registration infringements were new and distinct, as the continuity of defendant's infringing conduct was broken by virtue of the parties' settlement. The court rejected this argument, stating that other courts considering whether there is a legally significant difference between infringements have focused on whether the infringements were of the same kind – not some legally significant shift between the

### b. Cessation of Infringement

Parry's best argument relies on the gap in time between Akanbi's isolated infringement in 2016 and the post-registration infringement of 2020. There is strong statutory and precedential support for the view that prolonged cessation of the infringing activity may prevent a defendant from asserting the defense of continuing infringement. *See Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-159 (2d Cir. 2007); *Rosen v. Netfronts, Inc.*, No. CV 12-658 CAS FFMX, 2013 WL 3467205, at *4 (C.D. Cal. July 9, 2013); *see also S. Credentialing Support Servs.*, 946 F.3d at 786 n.4 (observing that *Troll* and the leading copyright treatise recognize that a substantial gap in time between pre-registration and post-registration infringement may overcome Section 412's bar on statutory damages and attorneys' fees).

In *Troll*, the Second Circuit examined Section 412's application to a different provision of the Copyright Act than the one at issue here. However, the panel's review of the legislative history revealed

> that Congress understood Section 412 to mean that a post-registration act of infringement will not be deemed to have commenced before registration if the infringing activity ceased for an *appreciable period of time*. In such a case, the copyright owner could recover statutory damages and attorney's fees for that new, post-registration act of infringement

*Troll*, 483 F.3d at 158-159 (emphasis added). Since *Troll*, district courts outside of the Second Circuit have acknowledged that prolonged intervals between infringements impact copyright owners' ability to recover statutory damages. *See*

---

relationship of the parties. *Grant Heilman Photography, Inc.*, 2018 WL 3193706, at *4-*5. Notably, the analysis in *S. Credentialing* is primarily textual and does not engage whether a shifting legal relationship between parties would implicate distinct pre- and post-registration infringements.

*Pacesetter Homes, Inc. v. GBL Custom Home Design, Inc.*, 2021 WL 3633960, at *4 (holding that it would be inappropriate to dismiss infringement claims before discovery based on whether acts were continuing infringement or separate acts of infringement); *Duncanson v. Wathen*, No. 614CV704ORL40KRS, 2016 WL 7319714, at *4 (M.D. Fla. Apr. 14, 2016) (same); *Rosen*, 2013 WL 3467205, at *4 (Section 412 did not cover subsequent act of infringement after cessation of roughly five years).

In its response to Parry's Motion, Urban asserts that "Akanbi's Accused Design was created [in] 2016 and continued to be displayed through her sale of the design to [Urban] and to the present day."[8]  Urban's Response in Opp'n, at 9-10.  According to Urban, this means that "[t]here was no cessation of the infringement, which commenced with Akanbi in 2016."  *Id.* at 10.  In support of its position, Urban cites to *Rosen*, *supra*, from the District Court for the Central District of California.

In *Rosen*, the plaintiff produced and then registered certain photographs with the Copyright Office in 2004.  *Rosen*, 2013 WL 3467205, at *1.  Prior to this registration, the defendant acquired the photographs and "displayed them and offered them for sale through his store, through mail-order catalogs, and through the internet."  *Id.*  In 2005, due to a technical problem with the defendant's website, defendant removed the business from the internet which also removed the pre-registration infringing pictures.  *Id.* at *2.  In 2010, after five years dormant,

---

[8]    The Joint Statement of Facts does not indicate whether the post remains up today.  There is only an agreement that the post was altered at some point in 2016 to remove any reference to Parry. Joint Statement of Facts, at ¶ 4.  Technically, for the purposes of Urban's Motion it would be proper to assume the post had been taken down (in favor of Parry), and for Parry's Motion it would be proper to assume the post remains up (in favor of Urban).  Whether the post remains up, or has been taken down does not impact this Court's analysis.

defendant revived the online business and the infringing pictures inadvertently appeared for sale online once again.  In plaintiff's copyright infringement action, defendant asserted the doctrine of continuing infringement – attempting to link the pre-registration infringement with the incidental post-registration infringement in 2010.  *Id* at *3.  The court held that the doctrine of continuing infringement did not apply because defendant "ceased displaying the [p]hotographs through his website between 2005-2010, and this cessation of infringing activity renders the defense of continuing infringement inapplicable[.]"  *Id*. at *3.

Here, Urban argues that in the online context, cessation equates to a *removal* from the online platform.  Since Akanbi never removed the initial 2016 infringing post, Urban asserts that infringement never ceased and is therefore "continuing." At first blush this argument is persuasive.  However, the holding in *Rosen* that removal constituted cessation under the continuing infringement doctrine does not *ipso facto* support the assertion that infringement is "continuing" absent removal of infringing photos.  No authority has been cited to support the idea that removal of infringing work from an online platform is the *only* means of cessation.  In fact, such a holding would be inconsistent with the separate-accrual rule that attends the statute of limitations in copyright actions.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671, (2014).[9]

> Under [the separate-accrual] rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong.  Each wrong gives rise to a discrete "claim" that

---

[9]    The Honorable Stephanos Bibas argued *Petrella* on behalf of the petitioner before his appointment to the Third Circuit.

"accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Id.*

*Color Image Apparel, Inc. v. Jaeschke*, another case from the District Court for the Central District of California is illustrative of this point. No. 221CV07187SVWMAR, 2022 WL 2643476, at *1 (C.D. Cal. June 7, 2022). There, defendant participated in several photoshoots for plaintiff/apparel designer. The defendant subsequently shared some of these photos on his personal Instagram account. Plaintiff alleged that defendant's posts featuring him wearing their apparel infringed on their copyright in the subject photographs.

At summary judgment, defendant asserted the three-year statute of limitations on copyright infringement actions had run since the initial infringing activity of posting the photographs took place. *Id.* at *2. In response, plaintiffs asserted that each day defendant left the photos up on Instagram constituted a separate infringing act – thereby extending the accrual date until the date when the photos would be taken down. *Id.* In rejecting this argument, the court cited to *Patrella* – noting that "separately accruing harm should not be confused with harm from past violations that are continuing." *Id.* (*citing Petrella*, 572 U.S. at 671 n.6). The court explained "that merely leaving infringing content up on a website does not constitute a separately accruing harm." *Id.* at *2; *cf. Foss v. E. States Exposition*, 149 F.4th 102, 109 (1st Cir. 2025) (skeptical of plaintiff's argument that internet posts constituted continuing infringing displays until they were taken down).

Although no accrual issue has been presented here, the above analysis informs this Court's view of Urban's arguments regarding cessation of infringing activity. It is the discrete act of posting the Accused Designed that constitutes the infringement. That the Accused Design remained up may have continued to *harm* Parry, however this does not mean Akanbi's *infringement* continued through the registration period and to the eventual misappropriation by Urban. That would be a confounding state of the law and Urban has cited no law indicating that Section 412 requires this result.

Urban's position also seems to butt heads with the accepted interpretation of Section 412. The word "commences" for the purposes of Section 412 refers to "the first act in a *series of acts constituting continuing infringement* … This makes sense because it would be peculiar if not inaccurate to use the word commenced to describe a single act rather than the first in a group of acts." *Bouchat*, 506 F.3d at 330. (cleaned up; citations omitted). Here, the operative acts are: (1) Akanbi's 2016, pre-registration infringement; (2) Akanbi's 2020 post-registration licensure of the Accused Design to Urban; and (3) Urban's 2020 post-registration use and import of the Accused Design on products for sale. Leaving the Accused Design up on Instagram during the four-year gap is not an act at all. It is inaction. This inaction destroys the temporal succession emblematic of a "series of acts." Thus, the mere existence of the post on Instagram cannot be part of a series of acts constituting infringement. In the words of *Troll*, there was a "more than trivial interruption" between acts infringements. 483 F.3d at 159.

20

A 20th century hypothetical is instructive on this 21st century point.  Consider a scenario where a photographer, Ben, had captured lovely patriotic images of our Independence Hall in anticipation of the bicentennial celebration on July 4, 1976. Now suppose Ben's brother, Frank, pilfered some of the photos and produced patriotic posters before Ben registered his copyright – selling a few to local organizations. Eventually the posters fell out of vogue and their production ceased shortly after the bicentennial.  In an effort to salvage their brotherly love, Ben declined to file suit against Frank for this pre-registration infringement.  Ben did however maintain negatives of the photographs and kept them in safe keeping for future use.

Fast forward to present day, Ben has registered his now-vintage photos with the Copyright Office just in time for the Nation's 250th birthday, July 4, 2026. Unaware of his brother's recent registration or plans for Independence Day, Frank gave a way a few of his old prints from the 1976 celebration to an enterprising group of students to reproduce and sell as a part of a local civics initiative.  Fifty years after the initial infringement, it could hardly be said that the infringement *continued* for the purposes of Section 412 simply because the posters from Frank's original misappropriation are still publicly available or displayed.

Viewed through the prism of the above scenario, it follows that the four-year gap (i.e., the time between Akanbi's Instagram post and the post-infringement misappropriation) is incongruous with Urban's theory of continuing infringement. Akanbi's failure to remove the post from public display on the internet is not dispositive.  Like the hypothetical above, public availability or display cannot be the

only indication that infringement continues under the Copyright Act. There must be some activity linking act to act, thereby creating a series of acts. *See Bouchat*, 506 F.3d at 330. Though removal from the internet might have been sufficient in this case to demonstrate cessation of infringement (*see Rosen* above), it was not necessary. Absent controlling Third Circuit precedent on the issue, this Court believes this timeline is representative of the cessation described in *Troll*.

Finally, Urban suggests in its motion for summary judgment that the privity (licensing) between Akanbi and Urban works to bridge the pre-registration infringement with the post-registration infringement. See Urban's Mot. at 12-13. Urban also suggests that Parry's reliance on *Troll* is misplaced in that the Second Circuit was reviewing copyright protection to foreign works. *See* Urban's Resp. in Opp'n. at 9-10. These arguments are unpersuasive.

Urban primarily cites to *Morgan* for its privity arguments. 2011 WL 2181385. *Morgan*, in turn, largely adopts the reasoning from the Fourth Circuit's decision in *Bouchat*. There, plaintiff-copyright owner sought statutory damages and attorneys' fees against post-registration infringers who were licensees of pre-registration infringer. The panel held that Section 412 barred plaintiff's recovery because the initial infringement occurred the month before plaintiff's registration. *Bouchat*, 506 F.3d at 330.

In evaluating whether the infringement was continuing the panel explained that Section 412 "must be read in harmony with [Section] 504, which allows statutory damages 'for all infringements involved in the action … for which any one infringer

is liable individually, or for which any two or more infringers are liable jointly and severally.'" *Id.* (*citing* 17 U.S.C. § 504(c)(1)). The court further explained that when the initial infringer gave each licensee permission to copy, it became responsible for the licensees' subsequent infringements, making it jointly and severally liable for the infringing acts of each licensee under Section 504(c). *Id.* at 330-331. The court concluded that "[b]ecause a statutory damages award covers all infringements involved in the action for which infringers are liable, it is appropriate to treat the earliest date of infringement by *any* participant in a line of related copyright violations as the date of commencement." Id. at 331. (emphasis in original).

The facts and reasoning of *Bouchat* and *Morgan* do little to help Urban here. First, no party in either case argued that there was an appreciable stoppage in infringement such that the continuing infringement doctrine would not apply. In fact, in both cases the infringement appears to have been unbroken and continuous. *See Bouchat*, 506 F.3d at 324 (the Ravens used the logo from June 1996 until the end of the 1998 season, during which the NFL licensed the design to hundreds of manufactures for merchandise); *Morgan*, 2011 WL 2181385, at *1 (defendant acquired several of the infringing drawings in 2001 and then subsequently distributed the drawings to subsidiaries who continued the infringement by using the drawings to construct, market and sell houses). Additionally, *Bouchat*, the more persuasive authority on the point of licensure/privity, was decided in the same year as *Troll*. Even if there had been an appreciable break between infringements, the

Fourth Circuit may not have had occasion to engage the analysis unless the argument was preserved below.

Further, if any credence is to be lent to the cessation of infringement rule announced in *Troll*, then privity or licensing alone cannot be the sole factor in determining whether infringement continues. The facts before this Court are a perfect case study for this principle. Where an infringer first misappropriates work years before its registered with the Copyright Office, then licenses that infringed work to another party shortly after its registered – but does nothing during the years-long gap in between the first and the next misappropriation – it cannot be said that licensing the infringed work reactivates the dormant period into a period of ongoing infringement. This is particularly true here, where no record evidence (or even argument on behalf of Urban) has been presented indicating that Akanbi used or otherwise commercialized the Accused design between the 2016 misappropriation and the 2020 post-registration infringement.

Urban further asserts that *Troll* is "completely off-base" because it related to registration of foreign works. This argument is shallow. A review of the legislative history reveals that Congress intended Section 412 to be applicable to "works of foreign and domestic [origin] alike." H.R. Rep. No. 94-1476, at 158 (1976); *see also* 7 Patry § 24:40 (Sept. 2025 update). Accordingly, the Section 412's application with respect to the cessation of infringing activity must also apply with equal force to both foreign and domestic works.[10]

---

[10]    The caselaw on this area recognizes two principal purposes behind Section 412. "In addition to giving copyright owners incentive to register, § 412 also provides potential infringers with an

Based on the forgoing, this Court finds that the infringement of Parry's original work was discontinued for an appreciable amount of time, from 2016 until November of 2020.  Thus, Section 412 does not bar Parry's claim for statutory damages and attorneys' fees against Urban.

## V.    Innocent Infringement

Urban has also moved for an adjudication that its activity constitutes innocent infringement.  Under Section 504 the "court may reduce an award of statutory damages to a sum of not less than $200 … where the court finds, that such infringer was not aware of and had no reason to believe that his or her acts constituted an infringement of copyright."  *Malibu Media, LLC v. Doe*, 381 F. Supp. 3d 343, 360 (M.D. Pa. 2018) (*quoting* 17 U.S.C. § 504(c)(2)).  "A defendant has the burden of proving innocent infringement, and to carry this burden, the defendant must show a good faith belief that no infringement occurred, and must also show that this belief was objectively reasonable."  *Rosen*, 2013 WL 3467205, at *4 (citation omitted).  To the extent a defendant establishes a good faith effort to avoid infringement, an award of attorneys' fees to the copyright owner are generally not warranted.  *Id.* at *5 (citations omitted).

Urban asserts that it "reasonably believed that [its] use of the Echinacea Accused Design was lawful because Akanbi presented it as hers and affirmatively

---

incentive to check the federal register." *Johnson*, 149 F.3d at 505.  In a scenario where a plaintiff may have forfeited their ability to seek statutory damages by failing to register their work before the initial misappropriation, it would seem counterproductive to prohibit the plaintiff from seeking statutory damages *forever* with respect to different infringers or infringements much later in time.  In other words, it seems that Section 412 still serves its stated purpose *vis-á-vis* infringements that are not a part of the same series as the pre-registration infringement.

licensed its use, in exchange for a license fee, in a collaboration to which she enthusiastically agreed." Urban's Mot., at 15. Parry counters that Urban's belief in this regard could not have been reasonable because the record does not indicate that Urban inquired about Akanbi's creation process or secure a warranty of non-infringement. Parry further argues that at the very least this creates "a material question as to the reasonableness of [Urban's] innocent infringer defense." Parry's Resp. in Opp'n, at 12.

The Court believes, and the record makes clear, that Urban's activity does not constitute willful infringement. However, the Court agrees with Parry in that there is not enough in the record to determine as a matter of law whether Urban's belief that it was not infringing was reasonable. Notably, neither party addressed what this Court believes to be the most conspicuous sign of potential infringement – a sign that perhaps should have clued Urban into the fact that Akanbi's work was not her own.

The 2016 infringing Instagram post itself expressly states that Akanbi "*started from* a fabric swatch: 'Pretty Potent Echinacea[.]'" Joint Statement of Facts, at Ex. C. This alone might have put a lay observer on notice that the work they were viewing started from another source. The fact that Akanbi herself puts the source in quotations indicates that it is titled. Designs are typically titled only when someone bestows that title – typically an owner.

How the design evolved from "Pretty Potent Echinacea" into the Accused Design, and what steps Urban took to uncover that evolution, may weigh on the

26

reasonableness analysis. Nothing in the e-mail correspondence between Urban's representatives and Akanbi indicates whether this sort of inquiry was made. Accordingly, Urban's motion for summary judgment on the issue of innocent infringement is denied as there are material questions of fact as to the reasonableness of its belief that no infringement occurred.

## VI. Substantial Similarity

As observed above, to state a claim for copyright infringement a claimant must establish "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc.*, 307 F.3d at 206 (3d Cir. 2002). Parry has produced a Certificate of Registration and Urban has not disputed her ownership of a valid copyright. But, for Parry to ultimately prevail, she must also prove that the Original Design and the Accused Design are substantially similar. *Tanksley*, 902 F.3d at 171. This inquiry "asks whether a lay-observer would believe that the copying was of protectible aspects of the copyrighted work." *Id.* at 174 (cleaned up)

Parry's motion asserts that there is no genuine issue of material fact regarding whether the Defendants' infringed on the copyrighted work. Parry tersely argues that "it is undisputed that the Echinacea Design and the Accused Design exhibit substantial similarity." Parry's Mot. at 8. Separately, although Urban's briefing primarily focuses on the issues of continuing infringement and innocent infringement, it consistently refers to the infringement as "alleged". Summary judgment on the issue of substantial similarity is generally disfavored, as it usually

involves "extremely close question[s] of fact" for a jury. *Tanksley*, 902 F.3d at 171. To the extent Parry's Motion seeks summary judgment on the issue of substantial similarity between the Original Design and the Accused Design, that Motion is denied.

## VII.    Conclusion

Based on the foregoing, Urban's Motion for Summary Judgment is denied in its entirety. Parry's Motion for Summary Judgment is granted as to the issue of continuing infringement, but the Motion is denied in all other respects. Accordingly, there are two issues remaining for the trier of fact: (1) whether the Original Design and the Accused Design are substantially similar; and (2) if so, whether Urban's conduct constitutes innocent infringement.

An appropriate Order will follow.

BY THE COURT:

_____

GAIL A. WEILHEIMER,   J.